UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAMION WHITTEN,

    Petitioner,

-vs-                                                  Case No.  8:04-CV-2352-T-30TBM

JAMES R. MCDONOUGH[1],

    Respondent.
_____/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2000 conviction for home invasion robbery with a firearm entered by the Twelfth Judicial Circuit Court, Manatee County, Florida (Dkt. 1).  Respondent has filed a response to the petition (Dkt. 6), and Petitioner has filed a reply thereto (Dkt. 11).  The matter is now before the Court for consideration on the merits of the petition. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). A recitation of the procedural history of Petitioner's criminal conviction is not necessary to the resolution of his habeas claims because Respondent does not dispute the timeliness of the petition or assert that the claims are not exhausted in state court.

---

[1]James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James v. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**Standard of Review**

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002).

Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where, as here, a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of the petitioner's claims. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

Petitioner raises one claim[2] in his petition: his trial counsel was ineffective for failing to inform him of the State's plea offer of 30 years imprisonment.[3] Petitioner states that had he known of the offer, he would have accepted it.[4]

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

---

[2]In his federal habeas petition Petitioner does not claim that he was deprived of a fair trial or that counsel was ineffective at trial.

[3]Petitioner asserts that on the day of his trial he became aware that the State had previously offered a plea, and he was never given the opportunity to accept or reject it (Dkt. 7, Ex. 6 at 4).

[4]Following a jury trial, the state trial court sentenced Petitioner to life in prison as a habitual felony offender. (Dkt. 7, Ex. 17 at ).

at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). *See also* §2254(e)(1). "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

A client must be involved in the decision of whether to accept or reject a plea offer, and failure to inform the client of the offer constitutes ineffective assistance of counsel. *See Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir. 1986); *see also* Fla. R. Crim. P. 3.171(c)(2) (counsel must convey any offer made by the prosecution and advise the defendant on possible alternatives.). If counsel fails to communicate the plea offer, then the defendant must show that but for counsel's error, defendant would have accepted the plea

offer. *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991).

The state post-conviction court set forth the correct standard of review for an ineffective assistance of counsel claim (Dkt. 7, Ex. 7 at 2-3). Thus, to be entitled to relief under § 2254, Petitioner must establish that the trial courts's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lack merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

Petitioner raised his claim in state court in his Motion for Post-Conviction Relief pursuant to Fla. R. Crim. P. 3.850. (Dkt. 7, Ex. 6 at 4-8). The state post-conviction court denied the Petitioner's claim (Dkt. 7, Ex. 7 at 3-4). However, Petitioner appealed the denial of his post-conviction motion, and the state appellate court found that Petitioner was entitled to an evidentiary hearing on his claim, and reversed and remanded for further proceedings (Dkt. 7, Ex. 8).[5]

**Petitioner's testimony**

Testimony was presented on this issue at the state evidentiary hearing. Petitioner attested that his trial counsel represented him for the home invasion charge and for two other cases in which he was charged with selling cocaine and felony driving while license suspended. Petitioner testified that his trial counsel never informed him that the State made a plea offer in the home invasion case. Petitioner did admit that his trial counsel discussed

---

[5]The appellate court also reversed and remanded on one other ground (Dkt. 7 at Ex. 8).

with him the fact that the State was treating him as an habitual felony offender.

Petitioner claimed that on the morning of his trial he learned that the State had made a plea offer of thirty (30) years in the home invasion case when his trial counsel informed the court that the State had made that offer. Petitioner testified that after he heard his counsel say that the State had offered thirty years, he asked his counsel "that's how much time they were trying to give me?" He claimed that he did not say anything to the court at that time because he did not think that the offer was still available to him. Petitioner claimed that if he had been given the opportunity to discuss the offer with his counsel, he "would have eventually pleaded out."

On cross examination during the evidentiary hearing, Petitioner stated that at the time of his trial he had been told that one of his two co-defendants had the charges dropped against him, and the other received an eight year sentence. He admitted that his counsel had informed him that he was charged with a first degree felony for which he was facing a possible life sentence, and that counsel had discussed with him the habitual felony offender paperwork which the State served a week prior to trial. Petitioner stated that he "kind of" thought about pleading out, and that he did plead out in the selling cocaine and driving with a suspended license cases (Dkt. 7, Ex. 10 at 4-17).

**Mr. Rawe's testimony**

The Assistant State Attorney, James Rawe, who prosecuted Petitioner's home invasion case testified that to his recollection he never made a plea offer in the case. He did recall having a conversation with Petitioner's counsel in which Petitioner's counsel informed

him that Petitioner was not going to accept any plea offer, but Mr. Rawe did not recall that Petitioner himself stated that he was not willing to accept a plea. He also recalled that one to two weeks prior to trial, Petitioner's counsel extended an offer that Petitioner serve ten years in prison, but Mr. Rawe did not agree to that because he had a strong case against Petitioner and because of Petitioner's criminal record. Mr. Rawe testified that he was the lead attorney on the home invasion case and that his co-counsel, Mr. Brodsky, would not have made any plea offers to Petitioner (Dkt. 7, Ex. 10 at 17-30).

**Mr. Walker's testimony**

Petitioner's trial counsel, Mr. Walker, testified that Petitioner was adamant that he was not guilty of the home invasion charge, and that he and Petitioner discussed the possibility of Petitioner agreeing to accept ten years in prison, but Petitioner "was in no way going to accept a ten-year offer." Mr. Walker attested that Petitioner "was not interested in anything other than going to trial."

Mr. Walker's practice was to always extend the State's plea offers to his clients. He testified that he could not remember whether he received a plea offer of thirty years from the State, but he believed that the State must have made an offer of thirty years because the trial record shows that he told the court that the State had offered thirty years. However, he looked through his case file,[6] and there was never a written plea offer. He testified that if a plea offer had come from the State, then Petitioner knew what the plea offer was (Dkt. 7, Ex.

---

[6]Mr. Walker testified that "I reviewed what I had left [of Petitioner's file]. Most of the file, most everything, I sent to [Petitioner]." (Dkt. 7, Ex. 10 at 44).

Page 7 of 13

10 at 30-53).

Following the evidentiary hearing the state trial court denied Petitioner's claim and stated:

> **Ground One**: Under Ground One, Defendant claimed that his counsel was ineffective because he failed to convey a plea offer of thirty (30) years to the Defendant prior to trial. In his Motion, the Defendant conceded that he became aware of this offer on the morning of trial.
>
> At the evidentiary hearing, Defendant reiterated that the first time he heard anything about a plea offer for 30 years was on the morning of trial. (11/10/03 Tr. at 8) He admitted that he was aware the State was going to seek to treat him as a habitual felony offender should he go to trial and lose. (11/10/03 Tr. at 7) He also admitted that counsel had informed him that home invasion robbery was a first-degree felony punishable by a term of imprisonment of up to life should he be convicted. (11/10/03 Tr. at 13) Defendant admitted that even though he heard about the plea offer on the morning of trial, he never spoke up and asked his counsel any further questions about the offer nor did he tell counsel he wished to accept the offer. (11/10/03 Tr. at 9-10) Defendant stated that he "kind of"thought about pleading out prior to trial. (11/10/03 Tr. at 14)
>
> James Rawe, the prosecutor on the Defendant's case, testified that he never to his knowledge conveyed a plea offer in this case; it was a case for trial from day one. (11/10/03 Tr. at 19) The State had a very strong case including DNA evidence. (11/10/03Tr. at 20-21) Mr. Rawe recalled a conversation with Defendant's attorney in which he was told the Defendant "wasn't going to accept anything." (11/10/03 Tr. at 20) He recalled that just prior to trial there was a request for a plea offer, but he did not make one to his knowledge. (11/10/03 Tr. at 20) Mr. Rawe did not recall Defendant's attorney making the statement on the record prior to trial about a 30-year plea offer. (11/10/03 Tr. at 24-26)
>
> Stephen Walker, the Defendant's trial attorney, testified that the Defendant "was adamant he was not guilty" of a home invasion robbery. (11/10/03 Tr. at 33) He discussed ten years with the Defendant, but could not recall if ten years was an offer, a request, or a discussion related to the potential for a ten-year minimum mandatory sentence. (11/10/03 Tr. at 33-34) He recalled the Defendant was amenable to an 11/29 sentence, but there was

"no way" he would accept ten years. (11/10/03 Tr. at 34)

Mr. Walker could not recall how the number "30" came to him on the morning of trial; he could only think that the number came from the State, but he could not recall Mr. Rawe ever offering him 30 years. (11/10/03 Tr. at 36,39) He had no documentation in his file as to any plea offer and testified there was no written plea offer. (11/10/03 Tr. 40,45) Mr. Walker's most vivid recollection, however, was that the Defendant was not interested in anything other than going to trial; he never wanted to enter a plea in this case. (11/10/03 Tr. at 38,42) Mr. Walker stated that the Defendant held the belief that Dana Damstra's testimony "was going to be more favorable than it was, because Dana was his girlfriend." (11/20/03 Tr. at 38)

Based on the testimony presented, the Court cannot be certain as to whether or not a specific plea offer of 30 years was ever made by the State. Nonetheless, the Court finds that even if such an offer had been made and relayed to the Defendant prior to trial, it would have made no difference in this case. This conclusion is buttressed first by the Defendant's testimony that upon hearing of the offer for the first time on the morning of trial, he failed to ask Mr. Walker anything further about the offer and did not indicate either to Mr. Walker or the trial judge that he was interested in accepting the offer.

The Court's conclusion is further buttressed by Mr. Walker's testimony that the Defendant was adamant he was not guilty, he was interested only in going to trial and never wanted to enter a plea in this case. On the morning of trial, Mr. Walker wanted the trial judge to understand that "this was not a situation where Mr. Whitten was thumbing his nose to the - to a good plea offer. I thought that was very important for the judge to know." (11/10/03 Tr. at 48) In essence, Mr. Walker was informing the judge that his client had not refused a reasonable plea offer merely to take his case to trial. Mr. Walker stated had the Defendant shown the slightest interest in accepting a plea, "then probably what I would have done is stopped everything, and I would have sat down with him about- and talked to him about the opportunity of not maybe accepting 30 years but maybe pleading straight up and seeing what we could do." (11/10/03 Tr. at 49)

Defendant argued in his motion that had counsel properly advised him prior to trial that the state was seeking habitualization and he was facing a potential term of life in prison, "he would not have proceeded to trial, but taken the thirty (30) year plea *that the state had offered weeks prior to trial."* (Defendant's Motion at p. 5) (emphasis added)  This allegation at the least

Page 9 of  13

> implies that the Defendant did, in fact, have knowledge of some type of plea offer well in advance of trial. Nonetheless, the Defendant's own testimony at the evidentiary hearing refutes his allegations that he was unaware of the potential sentence he was facing should he go to trial and lose. He testified that Mr. Walker advised him he was charged with a first-degree felony, punishable by a term of 30 years to life in prison should he go to trial and be convicted. (11/10/03 Tr. at 12-13) He further admitted that he had been served with the habitual felony offender paperwork and had discussed that paperwork with Mr. Walker. (11/10/03 Tr. at 7, 13)
>
> In conclusion, the Court cannot discern with absolute certainty whether or not a plea offer was made in this case. The Court does conclude, however, based on the testimony, that even if a thirty-year plea offer had been presented to the Defendant, he would not have accepted such an offer.
>
> [FN1] Mr. Rawe's recollection at the evidentiary hearing would seem to conflict somewhat with his representation prior to the beginning of trial. Mr. Walker indicated that the State had offered 30 years. Immediately following this representation, Mr. Rawe stated, "Judge, that was the original plea offer, but so the court is aware, I filed a notice of intent to habitualize Mr. Whitten approximately a week ago, and at that time, I told his counsel, Mr. Walker, that prior plea offers were off the board and that I would be seeking a life - a habitual life sentence at this point. Just so the court knows." (T.T. 145)

(Dkt. 7, Ex. 11 at 2-5).

The state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).  In other words, "a federal habeas petitioner is stuck with them unless he can rebut their presumed correctness with clear and convincing evidence to the contrary."  *Hunter v. Sec'y, Dep't of Corr.*, 395 F.3d 1196, 1200 (11th Cir. 2005). "Clear and convincing" evidence is an "intermediate standard" of proof, lying between "preponderance of the evidence" and "beyond a reasonable doubt." *Addington v. State,* 441 U.S. 418, 424, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).  Although it is a "fairly high" standard, "clear and convincing" evidence "does not call for the highest level of proof,"

but it must demonstrate, in this context, a "high probability" that the state court's factual findings are unreasonable. *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005); *United States v. Owens*, 854 F.2d 432, 435-36 (11th Cir. 1988).

Having considered the matter, the Court finds no merit to Petitioner's claim. The Court cannot find that the state court's determination, that had a thirty year plea offer been made Petitioner would not have accepted it, is unreasonable. Petitioner's allegation in his Rule 3.850 motion that "had trial counsel properly advised him that the state was seeking habitualization and that he was facing Life imprisonment prior to trial, [Petitioner] would not have proceeded to trial, but taken the thirty (30) year plea that the state had offered weeks prior to trial[]" (Dkt. 7, Ex. 6 at 5) suggests that Petitioner was aware of the State's offer well in advance of trial. Moreover, Petitioner testified that up until the time of trial he "kind of" thought about pleading out to the home invasion charge, and a week before trial he pleaded out to the cocaine and driving with a suspended license charges (Dkt. 7, Ex. 10 at 14). Petitioner's testimony suggests that prior to trial he was considering a plea offer in the home invasion case. Petitioner's counsel testified that he clearly recalls that Petitioner was adamant that he was not guilty of the home invasion charge, and that Petitioner was not even interested in accepting ten years in prison or any other offer and wished to proceed to trial (Dkt. 7, Ex. 10 at 34). The prosecuting attorney specifically recalled having a conversation with Petitioner's counsel in which counsel informed him that Petitioner was not interested in accepting any offer (Dkt. 7, Ex. 10 at 20). Likewise, on the morning of trial when

Petitioner's counsel informed the court that there had been an offer of thirty years, Petitioner did not speak up and inform the court or his attorney that he never was told the State had made a plea offer or that he was interested in the offer (Dkt. 7, Ex. 10 at 8-9).

Petitioner has not come forward with clear and convincing evidence rebutting the state court's findings. Because this Court cannot find that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, Petitioner is not entitled to habeas relief. *See* 28 U.S.C. § 2254(d).

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue -- only if the

applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000),) or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) [*7] (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on January 10, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc

Copies furnished to:
All Parties/Counsel of Record